Filed 5/6/15  P. v. Rushing CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060382 |
| v. | (Super.Ct.No. FWV1300146) |
| LISA GAYE RUSHING, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Affirmed as modified.

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Lynne G. McGinnis and Eric A. Swenson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Lisa Gaye Rushing guilty of two counts of commercial burglary (Pen. Code, § 459; counts 1 & 3)[1] and two counts of petty theft with a prior theft-related conviction (§§ 484, subd. (a), 666, subd. (a); counts 2 & 4). Defendant was sentenced to a total term of three years eight months pursuant to section 1170, subdivision (h), with one year six months to be served in county jail and two years two months to be completed on mandatory supervision on various terms and conditions. On appeal, defendant argues that (1) her conviction on count 3 must be reversed because a significant mistake was made on the verdict form rendering the jury's intention unclear; and (2) two of her conditions of mandatory supervision must be stricken because they are unconstitutionally overbroad and vague. We modify one of defendant's supervision conditions, and reject her remaining contentions and affirm the judgment.

I

FACTUAL BACKGROUND

On July 27, 2012, Kristen Quattrocchi, the general manager of an ULTA cosmetics store in Chino, viewed the store's surveillance video due to a theft that occurred on July 26, 2012. On the video, an adult woman, later identified as defendant, and a girl, identified as defendant's 12-year-old daughter, can be seen walking into the store, and defendant taking bottles of perfume off a shelf and handing them to her daughter. Defendant's daughter then places the perfume bottles into a purse. Defendant

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

2

and her daughter take about 12 perfume bottles and leave the store without paying for any of the items.

On November 9, 2012, Quattrocchi noticed the Christian Dior perfume section of the ULTA store looked surprisingly empty. She then viewed the store's surveillance video from the prior day and saw defendant and her daughter taking perfume bottles off the shelf and placing them in a bag. From the location of the shelves, Quattrocchi determined they took Dior J'Adore, Estee Lauder Beautiful, and Estee Lauder Sensuous perfumes.

On November 30, 2012, Quattrocchi saw defendant and her daughter in the fragrance section of the ULTA store. Quattrocchi recognized defendant's daughter as the girl in the video based on her distinctive bright pink Hello Kitty purse. Quattrocchi also recognized defendant as the adult woman in the video. Quattrocchi called the police. Later, Quattrocchi watched the store's surveillance video from November 30, and saw defendant and her daughter walking around the perfume section and taking perfumes from the Estee Lauder section.

Law enforcement subsequently arrived and detained defendant and her daughter. Inside defendant's purse, an officer found three new, sealed bottles of perfume—one bottle of Estee Lauder Sensuous and two bottles of Estee Lauder Beautiful. Quattrocchi confirmed the perfume bottles found in defendant's purse were taken from the ULTA store.

The officer also made contact with defendant's adult daughter, who was waiting in a car in the parking lot. A search of defendant's cell phone showed two text messages between defendant and her adult daughter, in which they discussed an eBay account defendant maintained and perfumes. The eBay records revealed that defendant sold the stolen perfumes online for below retail price.

## II

## DISCUSSION

### A.    *Vacate Conviction Due to Unclear Intention*

Defendant contends that her conviction on count 3 for commercial burglary must be vacated because a significant mistake on the verdict form renders the jury's intention unclear. Specifically, defendant states that the verdict form for count 3 "asked the jury to render a verdict as to the crime of 'second-degree commercial burglary . . . in violation of Penal Code Section 484(a),' " but section 484, subdivision (a), relates to petty theft, not burglary. Defendant reasons that the ambiguity must have misled the jury and that "it is not unmistakably clear the jury intended to find [her] guilty of commercial burglary." Defendant believes that since "it is impossible to determine whether the jury actually reached a verdict on the essential elements of commercial burglary," the error is structural and reversal on count 3 is warranted.

The People respond defendant's claim is forfeited on appeal because defendant did not object to the wording of the verdict form. In the alternative, the People maintain the clerical error here was harmless given the evidence in this case, the language of the

4

information, the language of the other verdict forms, the court's jury instructions, and the arguments of counsel. We are inclined to agree with the People.

"An objection to jury verdict forms is generally deemed waived if not raised in the trial court." (*People v. Toro* (1989) 47 Cal.3d 966, 976, fn. 6, overruled on other grounds in *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3; see *People v. Jones* (2003) 29 Cal.4th 1229, 1259 [failure to object to assertedly ambiguous verdict form]; *People v. Bolin* (1998) 18 Cal.4th 297, 330 (*Bolin*) [defendant forfeited claim of error related to verdict form that contained incorrect code section reflecting prior serious felony conviction on a section 667, subdivision (a) finding and, in any event, the erroneous form used by the jury to reflect their finding was not prejudicial]; see also *People v. Harders* (1962) 201 Cal.App.2d 795, 798-799 [failure of counsel to object to verdict form identifying charged crime for which guilty verdict was returned by the wrong count number].) However, a reviewing court may in its discretion consider the challenge when it raises an issue that implicates the defendant's constitutional rights and when defense counsel was arguably ineffective for failing to raise it below. (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 649-650; see *People v. Osband* (1996) 13 Cal.4th 622, 689 [noting that, pursuant to section 1259, a "claim of instructional error may be considered for [the] first time on appeal if 'the substantial rights of the defendant were affected' by the asserted error"]; *People v. Radil* (1977) 76 Cal.App.3d 702, 710 [where no objection is made at trial, "the form of the verdict is to be regarded as immaterial where,

5

considering the form of the information and the plea of the defendant, the intention to convict of the crime charged is unmistakably expressed"].)

Here, defendant acknowledges that she did not object to the defect in the challenged verdict form, but urges the error affected her substantial rights. We disagree. The defect in the verdict form on count 3 appears to be one of a clerical error. (See *People v. Camacho* (2009) 171 Cal.App.4th 1269, 1274 (*Camacho*); *People v. Trotter* (1992) 7 Cal.App.4th 363, 370 (*Trotter*).) As such, defendant's claim is forfeited on appeal.

But even if we assume that the defect in the challenged verdict form affected her substantial rights, defendant's claim fails on its merit. The form of a verdict is immaterial provided the intention to convict of the crime charged is unmistakably expressed. (*Camacho*, *supra*, 171 Cal.App.4th at pp. 1272-1273; *People v. Jones* (1997) 58 Cal.App.4th 693, 710 [Fourth Dist., Div. Two].) A verdict must be given " ' "a reasonable intendment and be construed in light of the issues submitted to the [finder of fact] and the instructions of the court." ' " (*People v. Jones*, *supra*, at p. 710; *Camacho*, *supra*, at p. 1272.) Technical defects or clerical errors in a verdict may be disregarded if the jury's intent to convict of a specified offense is unmistakably clear, and the accused's substantial rights suffered no prejudice. (*Bolin*, *supra*, 18 Cal.4th at p. 331; *Camacho*, *supra*, at p. 1272.) The jury's intent may be determined with reference to the information and the court's instructions to the jury. (*People v. Paul* (1998) 18 Cal.4th 698, 707.)

6

In *People v. Escarcega* (1969) 273 Cal.App.2d 853, the jury verdict form contained the wrong Penal Code reference, but the jury was instructed on the correct offense. The Court of Appeal concluded that "[i]n giving effect to the manifest intention of the jury, the clerical error will be disregarded. [Citation.]" (*People v. Escarcega, supra,* at p. 858.)

We have no difficulty here in determining that the jury intended to find defendant guilty of second degree commercial burglary and that the reference to section 484, subdivision (a), was inadvertent. First, the verdict form specifically states that second degree commercial burglary is the offense of which defendant was found guilty.[2] Though the form refers to section 484, subdivision (a), which is petty theft, we think it far more likely that an inadvertent error will occur with the statute number than with the offense that is identified by name. The statute number has no meaning to jurors, who almost certainly consider only the name of the offense.

Second, the information alleged three counts of second degree commercial burglary with one occurring on November 30, 2012 (count 1); one occurring on November 8, 2012 (count 3); and one occurring on July 26, 2012 (count 5). The information also alleged three counts of petty theft with three prior theft-related convictions with count 2 alleged to have been committed on November 30, 2012, count 4

---

[2] Specifically, the challenged verdict form stated, "We, the jury . . . find the defendant . . . GUILTY of the crime of SECOND-DEGREE COMMERCIAL BURGLARY on or about November 8, 2012, in violation of Penal Code Section 484(a) as charged in Count III of the Information."

7

on November 8, 2012, and count 6 on July 26, 2012. In regard to count 3, the information specifically alleged that "[o]n or about November 8, 2012 . . . the crime of SECOND DEGREE COMMERCIAL BURGLARY, in violation of PENAL CODE SECTION 459, a felony, was committed by [defendant], who did enter a commercial building occupied by Ulta with the intent to commit larceny and felony." The information alleged a single violation of second degree commercial burglary committed by defendant on November 8, 2012.

Third, the jury was instructed pursuant to CALCRIM No. 1700 that "The defendant is charged in Counts 1, 3, and 5 with burglary." The jury was also instructed with CALCRIM No. 3515, which specified that "The defendant . . . is charged in Count III of the Information with the crime of SECOND-DEGREE COMMERCIAL BURGLARY on or about November 8, 2012, in violation of Penal Code section 459." That instruction also informed the jury that on each of the three days in question (July 26, 2012, November 8, 2012, and November 30, 2012), it was alleged that defendant had committed one count of second degree commercial burglary and one count of petty theft. That instruction further clarified that the verdict forms would ask the jurors to make the corresponding findings as to each count.

Moreover, during argument, the prosecutor informed the jury that "Counts 1, 3, and 5 are burglary." The prosecutor also told the jury that burglary is "a little different than petty theft. It's about entering, crossing the threshold. Entering the building with the intent to steal, that's what a burglary is there for. Petty theft is about the actual taking

8

of the item, okay." The prosecutor also reminded the jury, referencing the offense of burglary, "This is November 8th. Cross the threshold, you had intent to steal, it's over. It doesn't matter what happened." The prosecutor's argument here was not at all inconsistent with the jury instructions, which clearly set forth the elements of the charged offenses. (*Trotter*, *supra*, 7 Cal.App.4th at pp. 369-370; see *People v. Jones* (2003) 29 Cal.4th 1229, 1259 [argument of counsel considered in determining the intent of jury in rendering guilty verdict using an ambiguous verdict form]; *Camacho*, *supra*, 171 Cal.App.4th at p. 1274 [argument of counsel considered in determining the intent of jury in rendering guilty verdict using an inaccurate verdict form].)

The evidence is uncontradicted that defendant entered the ULTA store on November 8, 2012, and stole perfume. The record provided the jury with no rational basis, by way of argument or evidence, to find defendant guilty of more than one count of petty theft on November 8, 2012. Rather, the record is unmistakably clear that defendant committed one count of burglary and one count of petty theft on November 8, 2012. The jury was not misguided by the erroneous verdict form. The jury asked for no explanation on the discrepancy between the cited Penal Code section and the description of the offense in the verdict form, assuming the jury even noticed the discrepancy. Ultimately, the jury returned a verdict of second degree commercial burglary on count 3 as charged. In doing so, the jury necessarily found beyond a reasonable doubt that defendant entered the ULTA store with the intent to steal perfume.

9

Under these circumstances, the jury's intent to find defendant committed second degree commercial burglary is unmistakable. (See *Camacho*, *supra*, 171 Cal.App.4th at pp. 1272-1273; *People v. Jones*, *supra*, 58 Cal.App.4th at p. 710.) For the same reasons, the flaw in the verdict form is harmless beyond a reasonable doubt. (See *People v. Jones*, *supra*, 29 Cal.4th at p. 1260.)

B.     *Mandatory Supervision Conditions*

Defendant also argues that two of her mandatory supervision conditions should be modified because they are unconstitutionally vague and overbroad and violate her constitutional rights to travel and due process. The People argue defendant forfeited her challenge to these conditions because she failed to object at the sentencing hearing and they are based on an assertion that the conditions are unreasonable. In the alternative, the People assert that the notice condition and search condition are not overbroad and vague and do not infringe on her constitutional rights.

Among other terms and conditions of mandatory supervision, the court included the following requirements: "Keep the probation officer informed of place of residence and cohabitants and give written notice to the probation officer twenty-four (24) hours prior to any changes. Prior to any move provide written authorization to the Post Office to forward mail to the new address." (Condition No. 8) "Permit visits and searches of places of residence by agents of the Probation Dept. and/or law enforcement for the purpose of ensuring compliance with the terms and conditions of probation; not do anything to interfere with this requirement, or deter officers from fulfilling this

10

requirement, such as erecting any locked fences/gates that would deny access to probation officers, or have any animals on the premises that would reasonably deter, threaten the safety of, or interfere with, officers enforcing this term." (Condition No. 9) Defendant did not object to these supervision conditions, and indicated that she had gone over the terms with her attorney and that she understood all of the terms and conditions of her supervision.

As an initial matter, we assess the validity and reasonableness of conditions of mandatory supervision using the same standard applied to conditions associated with other forms of supervised release, including probation or parole. (*People v. Martinez* (2014) 226 Cal.App.4th 759, 762-764 [Fourth Dist. Div. Two].) The purposes and goals of both probation and supervised release are comparable: to provide an opportunity for successful reentry into the community. (§ 1170, subd. (a)(2); see *People v. Hackler* (1993) 13 Cal.App.4th 1049, 1058 ["The purpose of probation is rehabilitation."].)

In general, trial courts are given broad discretion in fashioning terms of probation or supervised release, in order to foster the reformation and rehabilitation of the offender, while protecting public safety. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120; *People v. Urke* (2011) 197 Cal.App.4th 766, 774.) Thus, the imposition of a particular condition of probation or supervised released is subject to review for abuse of that discretion. "As with any exercise of discretion, the court violates this standard when it imposes a condition of probation that is arbitrary, capricious or exceeds the bounds of reason under the circumstances. [Citation.]" (*People v. Jungers* (2005) 127 Cal.App.4th 698, 702.)

11

However, constitutional challenges are reviewed under a different standard. Whether a term of probation is unconstitutionally vague or overbroad presents a question of law, which we review de novo. (*In re J.H.* (2007) 158 Cal.App.4th 174, 183; *In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.)

Where a claim that a probation condition is facially overbroad and violates fundamental constitutional rights is based on undisputed facts, it may be treated as a pure question of law which is not forfeited by failure to raise it in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 888-889 (*Sheena K.*); *People v. Welch* (1993) 5 Cal.4th 228, 235.) As the court in *Sheena K.* explained, the doctrine of forfeiture on appeal does not apply to challenges to probation conditions based on "facial constitutional defects" that do "not require scrutiny of individual facts and circumstances." (*Sheena K.*, at pp. 885, 886.) However, the forfeiture doctrine does apply if the objection involves a discretionary sentencing choice or unreasonable probation conditions "premised upon the facts and circumstances of the individual case." (*Id.* at pp. 885, 888.)

Here, defendant claims that even though she did not object to the challenged conditions at sentencing, her vagueness and overbreadth arguments present a facial constitutional challenge with pure questions of law based on undisputed facts and, thus, can be properly raised on appeal for the first time. To the extent defendant's challenges raise pure questions of law, we will reach the merits of defendant's claim. We focus only on the constitutionality of the condition, not whether it is reasonable as applied to defendant. (See *People v. Lent* (1975) 15 Cal.3d 481, 486 [test for reasonableness of

12

probation conditions].)  By failing to object below, defendant has forfeited all claims except a challenge "based on the ground the condition is vague or overbroad and thus facially unconstitutional."  (*Sheena K.*, *supra*, 40 Cal.4th at p. 878.)

Trial courts must fashion precise supervision conditions so the probationer knows what is required.  (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  A condition is invalid if it is " ' " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' "  (*People v. Quiroz* (2011) 199 Cal.App.4th 1123, 1128 [Fourth Dist., Div. Two] (*Quiroz*).)  Nor may a court impose overbroad supervision conditions.  Where a condition impinges on a constitutional right, it must be carefully tailored and reasonably related to the compelling state interest in reformation and rehabilitation.  (*Quiroz, supra*, at p. 1128; *Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  A "court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation.  However, the court's order cannot be entirely open-ended."  (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358-1359 (*O'Neil*) [probation condition forbidding defendant from associating with all persons designated by his probation officer was "overbroad and permit[ted] an unconstitutional infringement on defendant's right of association"].)  "If a probation condition serves to rehabilitate and protect public safety, the condition may 'impinge upon a constitutional right otherwise enjoyed by the probationer, who is "not entitled to the same degree of constitutional protection as other citizens." ' "  (*O'Neil, supra,* 165 Cal.App.4th at p. 1355, quoting *People v. Lopez* (1998) 66 Cal.App.4th 615, 624.)

13

1. Condition No. 8

Defendant contends that condition No. 8 is overbroad and unduly infringes on her constitutional right to travel and relocate. She asserts the condition is overbroad because it requires her "to give notice of events she may not know are about to happen," such as "homelessness, instability, and unpredictable housing arrangements," which "are a fact of life, especially for many convicts, probationers, parolees, and those under mandatory supervision." She claims that she may have to relocate—a constitutionally guaranteed right to travel—"with little warning, and find it impossible to notify her probation officer 24 hours in advance." She believes that the residency condition must be modified to include "*or as soon thereafter as is reasonably possible*" (italics added) after the language "24 hours in advance."

The People do not specifically address defendant's concerns but assert that "[a] probation officer supervising someone like [defendant] must reasonably know where and with whom she resides." Relying on *People v. Olguin* (2008) 45 Cal.4th 375 (*Olguin*), the People argue that "[i]f it is permissible to place restrictions on a probationer's place of residence, it is certainly permissible to require that she give 24 hours' notice of any contemplated changes to her address or her roommates."

The People's reliance on *Olguin* is misplaced because our Supreme Court in *Olguin* did not address the precise issue raised by defendant here. In *Olguin*, the Supreme Court reviewed a condition of probation that required the probationer to inform the probation officer of any pets owned by the probationer and to inform the probation

14

officer within 24 hours of any changes. (*Olguin*, *supra*, 45 Cal.4th at p. 380.) The Supreme Court found that although the condition was not related to the crime the defendant committed, it was reasonably related to the supervision of defendant and, therefore, to his rehabilitation and future criminality. The court held, "The condition requiring notification of the presence of pets is reasonably related to future criminality because it serves to inform and protect a probation officer charged with supervising a probationer's compliance with specific conditions of probation . . . . [T]o ensure that a probationer complies with the terms of his or her probation and does not reoffend, a probation officer must be able to properly supervise that probationer. Proper supervision includes the ability to make unscheduled visits and to conduct unannounced searches of the probationer's residence. . . . Therefore, the protection of the probation officer while performing supervisory duties is reasonably related to the rehabilitation of a probationer for the purpose of deterring future criminality." (*Id*. at p. 381.)

Here, defendant does not challenge a probation officer's supervisory duties but the 24-hour notice provision as being overbroad and infringing on her right to travel. We do see the benefit of the probation officer being informed if defendant's residence has changed. Contrary to defendant's assertions, condition No. 8 as written is not unduly overbroad and it does not restrict her right to travel. It merely imposes a duty on defendant to notify her probation officer 24 hours prior to any change in residence. Defendant's arguments regarding the 24-hour notice provision relate to reasonableness. However, because she failed to object to the condition at the sentencing hearing and

15

indicated that she understood her supervision conditions, defendant forfeited her reasonableness challenge to condition No. 8.

### 2. Condition No. 9

Defendant also contends condition No. 9 is improperly overbroad and vague because it prohibits her from doing "*anything* 'to interfere' with searches," and it is not clear that "to interfere" requires a deliberate intent. She also argues that the condition "unreasonably restricts [her] legitimate interest in ensuring the security of herself and her family," and that the "ambiguous language" of the condition may bring innocent conduct subject to violation. She believes the condition should be modified to prohibit her from knowingly deterring or interfering with probation or police officers.

As previously noted, "A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness. [Citation.]" (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' [Citation.] The rule of fair warning consists of 'the due process concepts of preventing arbitrary law enforcement and providing adequate notice to potential offenders' [citation], protections that are 'embodied in the due process clauses of the federal and California Constitutions. [Citation.]" (*Sheena K.* at p. 890, quoting *People v. Castenada* (2000) 23 Cal.4th 743, 751.)

16

"The vagueness doctrine bars enforcement of ' "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." [Citations.]' [Citation.] A vague law 'not only fails to provide adequate notice to those who must observe its strictures, but also "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." [Citation.]' [Citation.] In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific context,' and that, although not admitting of 'mathematical certainty,' the language used must have ' " reasonable specificity." ' [Citation.]" (*Sheena K.*, *supra*, 40 Cal.4th at p. 890, italics omitted.)

"Proper supervision includes the ability to make unscheduled visits and to conduct unannounced searches of the probationer's residence. Probation officer safety during these visits and searches is essential to the effective supervision of the probationer and thus assists in preventing future criminality." (*Olguin*, *supra*, 45 Cal.4th at p. 381.) Officers must have ready access to the probationer's residence to verify the probationer's compliance and prevent future criminality such as the sale of stolen goods. Of course, locked gates and fences, and potentially dangerous animals create unreasonable obstacles to monitoring probationers. (*Ibid*., ["[a]nimals can be unpredictable and potentially

17

dangerous when faced with a stranger in their territory, and some pose a great or even life-threatening hazard to persons in these circumstances"].)

Here, the condition does not prohibit defendant from locking her doors. It only prohibits her from erecting locked fences and gates, impediments beyond the house that might delay access to the residence. In addition, the term "interfere" is not ambiguous and can be given a reasonable and practical meaning. (*Olguin*, *supra*, 45 Cal.4th at p. 382 ["A probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' "].) A reasonable interpretation of the challenged language, "not do anything to interfere," makes it clear that defendant will be prohibited from doing anything to impede or deter the probation officer in the exercise of his or her duties. Were defendant permitted to erect locked gates and fences, it would render the search and check terms nugatory by adding unreasonable additional obstacles to probation officers' execution of their duties.

Although we believe the knowledge requirement is implicit in the condition, to prevent arbitrary enforcement and provide clear notice, we will modify the term to include an explicit knowledge requirement. (See *Sheena K.*, *supra,* 40 Cal.4th at pp. 891-892.) We modify probation condition No. 9 as follows: "Permit visits and searches of places of residence by agents of the Probation Department and/or law enforcement for the purpose of ensuring compliance with the terms and conditions of probation; not knowingly do anything to interfere with this requirement, or knowingly deter officers from fulfilling this requirement, such as erecting any locked fences/gates that would deny

18

access to probation officers, or have any animals on the premises that would reasonably deter, threaten the safety of, or interfere with, officers enforcing this term."

## III

## DISPOSITION

Mandatory supervision condition No. 9 is modified to provide: "Permit visits and searches of places of residence by agents of the Probation Department and/or law enforcement for the purpose of ensuring compliance with the terms and conditions of probation; not knowingly do anything to interfere with the requirement, or knowingly deter officers from fulfilling this requirement, such as erecting any locked fences/gates that would deny access to probation officers, or have any animals on the premises that would reasonably deter, threaten the safety of, or interfere with, officers enforcing this term." As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

KING
J.